[Sac. No. 4817. In Bank.—February 16, 1934.]

G. L. LACY, Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

Thomas J. Straub, W. H. Spaulding, Clinton F. Stanley and W. H. Hatfield for Appellant.

Butler, Van Dyke & Harris and Butler, Van Dyke, Desmond & Harris for Respondent.

CURTIS, J.—After a re-examination of the authorities applicable to the legal issues involved in this cause, we find ourselves in accord with the opinion of the District Court of Appeal handed down by said court when this action was pending therein. The queston concerning which we were in doubt when we granted a hearing herein was whether the appellate court had properly applied the doctrine of proximate cause to the facts in this case, where the defendant was held liable for injuries sustained by plaintiff by reason of the negligence of Gage in driving his automobile over the power line pole which the defendant's employees had negligently left in plaintiff's driveway. ▇ The authorities in this state hold that where the original negligence continues and exists up to the time of the injury, the concurrent negligent act of a third person causing the injury will not be regarded as an independent act of negligence, but the two concurring acts of negligence will be held to be the proximate cause of the injury. (*Carroll* v. *Central Counties Gas Co.,* 74 Cal. App. 303, 308 [240 Pac. 53]; Id., 96 Cal. App. 161, 167 [273 Pac. 875, 274 Pac. 594], in addition to *Pastene* v. *Adams,* 49 Cal. 87, and other cases cited in the opinion of the District Court of Appeal.)

▇ Applying this well-established doctrine to the facts in this case there can be no question but that the proximate cause of plaintiff's injury was the concurring negligence of defendant in leaving said pole in the driveway and the negligence of Gage in so operating his automobile as to collide

with said pole. In such a case either of the negligent persons would be liable to the plaintiff for his injuries.

Defendant has cited for the first time in its petition for hearing a number of authorities from jurisdictions other than our own. Assuming that these authorities are all that the defendant claims them to be, they would be in direct conflict with the decisions of the courts of this state upon the question now before us. This court would therefore not be justified in accepting them as either controlling or decisive of said question.

The opinion of the District Court of Appeal, written by Mr. Justice Sturtevant, we therefore adopt as the decision of this court. It is as follows:

"This is an action to recover for personal injuries. The jury returned a verdict in favor of the plaintiff and from the judgment entered thereon the defendant has appealed.

"On March 17, 1930, and for many years prior thereto, the plaintiff was engaged in farming on his ranch near Elk Grove. His farm is located on the south side of Sheldon road, a public highway running east and west. On the eastern boundary is a wire fence. In the extreme northeast corner is a gate leading from the highway into the farm. From that gate there is a piece of open ground about fifty feet by five hundred feet which is not planted. On the western side of the opening the ground is planted to vineyard. In the extreme southern end of the open ground there is a pumphouse. The pump is operated by an electric motor. Near the pumphouse is a vat for dipping prunes. Along the eastern side of the open ground are wagon tracks showing travel, but it was the claim of the plaintiff that the entire strip of open ground was laid out for and used as a roadway for farming purposes. For the purpose of furnishing the plaintiff current the defendant had installed a branch line leading from Sheldon road along the border of the vineyard south to the pumphouse. For that purpose three poles were erected. On the 17th of March, 1930, the transformer pole near the pumphouse was thirty-five feet long. Being dissatisfied with it the defendant entered the premises, installed a pole forty feet in length, and having done so its employees took out the other pole and toppled it over with the top end extending toward the east. Notwithstanding requests by the plaintiff, the defendant's agents did not remove the

pole, but it was left lying on the ground. It continued to remain there until after the accident complained of. On May 1, 1930, the plaintiff commenced to prepare to irrigate. When he attempted to start his pump he encountered such difficulties that he sent to the Beach Garage at Elk Grove for mechanical assistance. Thereafter Mr. Gage drove out to the plaintiff's farm in his garage service car. He entered the gate on the Sheldon road and drove along the western side of the open ground above mentioned southerly toward the pumphouse. On approaching the pole lying on the ground Mr. Gage swerved toward the east, passed around the eastern end of the pole and turned directly west in front of the pumphouse. There he stopped his car, leaving the throttle open, threw the shift into reverse and at the same time cramped the wheels distinctly to the right, then he got out of his automobile and he and the plaintiff made an examination of the condition of the pump. It transpired that when the defendant's employees installed the new pole the wires were so connected that the pump was operating backwards. To make the changes Mr. Gage needed a particular kind of a screwdriver. The plaintiff informed him that he had one at his house. Thereupon Mr. Gage directed him to get in the automobile and that they would go for the screwdriver. The plaintiff attempted to enter the automobile on the right-hand side. At the same time Mr. Gage stepped to the front and cranked the automobile. By that time the plaintiff had stepped upon the running board and at the same instant the automobile dashed back. Mr. Gage asked the plaintiff to shut off the ignition. Before he could do so the car hit the pole and the plaintiff was thrown off the automobile onto the ground. When the automobile hit the defendant's pole the pole was raised into the air momentarily and then fell across the plaintiff, breaking both of his legs. For the injuries so suffered the plaintiff sued to recover.

"As we view the case we find no material conflict in any of the evidence. The defendant contends that the leaving of the thirty-five foot pole as it was left by defendant's line crew was not an effective and contributing cause of the injury to plaintiff unless in accordance with the usual experience of mankind the result ought to have been foreseen and apprehended. The plaintiff replies that the defendant negligently placed the pole and negligently left it in that place

from March until May after being notified to remove it and that Mr. Gage so negligently operated his automobile as to cause it to collide with the pole and as a proximate result of the concurrrent negligence of the employees of the defendant and Mr. Gage the pole was thrown into the air and caused to fall upon the plaintiff, thus causing the injury complained of. Continuing the plaintiff claims that the question before the court is solely a question of fact which the jury on sufficient evidence has found against the defendant and that under well-settled rules a court of review may not disturb the finding.

■ ''The first part of the plaintiff's reply is entirely sound and is supported by a long line of decisions in this state. (*Pastene* v. *Adams,* 49 Cal. 87; *Merrill* v. *Los Angeles Gas & Elec. Co.,* 158 Cal. 499 [111 Pac. 534, 139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559]; *Katz* v. *Helbing,* 205 Cal. 629 [271 Pac. 1062, 62 A. L. R. 825]; *Royal Indemnity Co.* v. *Public Ser. Corp.,* 42 Cal. App. 628 [183 Pac. 960]; *Polloni* v. *Ryland,* 28 Cal. App. 51 [151 Pac. 296].) ■ The second part of his reply is also sound. Whenever the standard of duty is not fixed and there is introduced substantial evidence on the subject of proximate cause it is a question for the jury. (45 C. J. 1280; 1 Shearman & Redfield on Negligence, 112; *Andreen* v. *Escondido Citrus Union,* 93 Cal. App. 182, 187 [269 Pac. 556].) When, as here, it is claimed that an injury was caused both by the continuing negligent act of one defendant and the independent concurring negligent act of a third person, many facts are to be considered in determining the proximate cause. (45 C. J. 897–925.) The proof on that element includes all 'the attending circumstances'. (45 C. J. 914; *Royal Indemnity Co.* v. *Public Ser. Corp., supra; Marton* v. *Jones,* 44 Cal. App. 299 [186 Pac. 410].) In the instant case much evidence regarding attending circumstances was introduced. The question was submitted under full and specific instructions. If the jury believed the evidence so introduced by the plaintiff, and from its verdict we must assume it did, this court may not say as a matter of law that the issue of proximate cause was not proved.

''The defendant quotes from *Royal Indemnity Co.* v. *Public Ser. Corp., supra,* as follows: 'It also appears from the record that the pole is located in a field planted with barley, and that the barley was planted right up to the line of the

pole. The barley was being cut and horses were being used in connection with the cutting—all of which is a usual and necessary use of the land on which the pole is situated. We think that the jury was justified in concluding that the defendant should have anticipated that the guy wire might be subjected to sufficient strain by contact with the usual instrumentalities employed in farming operations, to cause a breaking or tearing away of the strands of the wire and a consequent sagging of the wire, and should have insulated its guy wires so as to avoid injury to others in the event of such an occurrence.' The defendant then argues: 'The foregoing quotation is the very meat and gist of the Indemnity Company case. But what earthly application can it have to the case at bar? Surely the leaving of an automobile in reverse gear ''because the brakes were not in very good order'' and the front wheels ''cramped towards the right'', and with the throttle of the engine ''wide open, very wide'', and then starting to crank it as Mr. Lacy was getting into it, is a situation that has nothing to do with Mr. Lacy's usual ranching or farming operations and could not have been anticipated by defendant. The bare statement of the facts in the instant case and the Indemnity Company case shows the distinction between them.' These arguments are not convincing. As a matter of law this court may not say that there is any more reason to assume that a farmer will or will not mow his barley than there is to say that he or his agents will or will not drive a motor car over his pump and prune road. (See, also, *Carroll* v. *Central Counties Gas Co.*, 74 Cal. App. 303 [240 Pac. 53]; s. c. 96 Cal. App. 161 [273 Pac. 875, 274 Pac. 594]; *Rauch* v. *Southern Cal. Gas Co.*, 96 Cal. App. 250 [273 Pac. 1111]; *Marton* v. *Jones, supra*.)

''The defendant cites and earnestly relies on *Klarquist et al.* v. *Chamberlain & Proctor et al.*, 124 Cal. App. 398 [12 Pac. (2d) 664]. However, we think that the case is not at all in point. As we have read the case the owners were constructing a building. Bavin & Burch were the contractors. Pursuant to permits issued to them the contractors laid down a new sidewalk. In everything they did they acted legally. The work had so far advanced that the sidewalk was not usable. Plaintiff's decedent while traversing the sidewalk adjacent to the building was therefore compelled to step out into the street. As he did so the truck of one of the defendants

approached in a negligent manner, knocked him down, and from the injury he died. The plaintiff sued the owner of the building, the owner of the truck, and Bavin & Burch. Judgment went against the defendants. The contractors appealed. The District Court of Appeal held that the contractors were not negligent, and as to them the judgment was reversed. But in the instant case it is not even suggested that the defendant was not negligent in leaving the transformer pole lying on the plaintiff's driveway.

"The defendant also cites *South-side Passenger Ry. Co.* v. *Trich,* 117 Pa. 390 [11 Atl. 627, 2 Am. St. Rep. 672], *Teis* v. *Smuggler Mining Co.,* 158 Fed. 260 [15 L. R. A. (N. S.) 893], and *Falk* v. *Finkelman,* 268 Mass. 524 [168 N. E. 89]. Each case contains instructive phrases, otherwise the first two are not helpful. The case last cited is more nearly in point and requires further comment. Three cases were tried together. One of the defendants had left his automobile parked at the curb. Fire apparatus approached from two directions and in the collision that followed the first automobile was driven up onto the sidewalk and injured the plaintiff. The parking of an automobile at the particular place for more than twenty minutes was prohibited by the terms of an ordinance recently passed, but the passage of which was never called to the attention of the defendant. In passing on the case the supreme court of Massachusetts said: 'The defendant violated no legal duty owed the plaintiff,' and thereupon it ordered judgment for the defendant. In the case of *Milbury* v. *Turner Centre System,* 274 Mass. 358 [174 N. E. 471, 73 A. L. R. 1070], the supreme court of Massachusetts cited the Falk case, and commenting thereon, said: 'The case differs from *Falk* v. *Finkelman, supra.* There the parking of the defendant's automobile at the curb was an innocent act, bare of negligence. Allowing it to remain there beyond twenty minutes, in ignorance of the ordinance forbidding parking for a longer time, although it subjected the owner to punishment, had nothing to do with the collision of fire apparatus or with causing the injury for which recovery was sought. In *Rea* v. *Checker Taxi Co.,* 272 Mass. 510 [172 N. E. 612], on the other hand, knowing violation of the one-way street ordinance placed the automobile where a collision could occur, one of the very things which the ordinance sought to prevent. It could be

found to be negligence directly contributing to the accident. A collision might well be found to be not something unusual and unlikely to happen as a result of such blocking of a corner as here took place—something only remotely and slightly probable—but, rather, a consequence naturally to be expected.' It is clear, we think, that the Falk case is not controlling in this case. On the other hand, the case last cited and *Felix* v. *Soderberg*, 207 Wis. 76 [240 N. W. 836], clearly support the views hereinabove expressed.''

The judgment is affirmed.

Shenk, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.