[Civ. No. 16404. First Dist., Div. One. Nov. 2, 1955.]

DORRIS L. WHITFORD, Appellant, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation) et al., Respondents.

James F. Boccardo and Edward J. Niland for Appellant.

Robert H. Gerdes, John J. Briare, Campbell, Custer, Warburton & Britton, Frank L. Custer and Byron Snow for Respondents.

BRAY, J.—In an action for damages for personal injuries the jury brought in a general verdict in favor of defendants. Plaintiff appeals from the judgment entered thereon.

### QUESTIONS PRESENTED

1. Was there any evidence of contributory negligence to support the court's instructions on that subject?

2. If contributory negligence was an issue, did the court err in failing to instruct specifically concerning the burden of proof on that issue?

### EVIDENCE

The accident occurred about 7 o'clock on a dark but dry evening in January at the intersection of Stockon and Polhemus Avenues in San Jose. At the southeast corner of the intersection there is a small island, to the right of which a feeder lane curves into Polhemus from Stockton for the use of vehicles intending to proceed easterly on Polhemus and into the underpass which is located immediately east of the intersection. This lane is 15 feet wide and at the point where it connects with Polhemus there is a stop sign and a white line on the pavement. Traffic entering Polhemus by this lane does so at approximately a 30-degree angle. The white line and stop sign are approximately one-third of the distance down the slope of the underpass.

The only witnesses to the accident were plaintiff and defendant Hill, the driver of defendant corporation's truck. With the exception of the question of whether plaintiff's car came to a second unexplained stop after having begun to move ahead into the underpass or when struck by defendant's truck was at the original stopping point, there is practically

no conflict in the evidence. Plaintiff testified that as he approached the intersection from the south and was about 300 to 400 feet therefrom, he noticed in his rear view mirror the lights of a vehicle following him "quite a ways back." He gave a right hand signal, turned into the lane and stopped at the stop sign. He then saw a car coming down Polhemus from his left and waited for it to cross his path. He could see in the glare of his rear view mirror the lights of the vehicle behind him. He said, ". . . just as I got ready to—the car passed, I stopped a few seconds to let the car pass, I had my car in low gear, so I was just getting ready to stop and all at once something come behind me and—well, it hit me pretty hard, and my neck flew back and my face flew down somewhere, I don't know where, and all I remembered, I was under the underpass." He then said that he was at a dead stop and had not moved ahead at all before being hit.

Defendant Hill testified that when he first saw plaintiff's car it was stopped with the front end at the white line. Defendant stopped his truck some 5 or 8 feet behind plaintiff's car. After he had stopped and while he was watching plaintiff's car it began to move ahead. Defendant then turned to look to his left up Polhemus to see if there was any approaching traffic. There was none. As he was turning to look he let his foot off the clutch and the truck started forward. When he turned his eyes towards plaintiff's car it had stopped and he was unable to prevent his truck striking it in the rear. After the collision the front of plaintiff's car was stopped 3 to 5 feet beyond the white line.

## 1. *Contributory Negligence.*

The sole question on this issue is whether there was any substantial evidence from which the jury could have found that plaintiff was contributively negligent. If there was it was proper to give the instruction on that subject. If there was not, it was improper. (See *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183].) Plaintiff contends that the fact that defendant knew plaintiff's car was in front of him and started his truck forward while looking to the left was negligence and the sole proximate cause of the accident as matters of law, and, likewise, that as a matter of law even if plaintiff started up and stopped as claimed by defendant, plaintiff was not guilty of contributory negligence. We do not agree with either contention. ■ Negligence, while usually a question of fact, may be a question of law. Whether

it is the latter depends upon the circumstances of the particular case. ■ If there is no conflict in the evidence or in the inferences to be drawn therefrom, the question becomes one of law. But here there is not only a conflict in the evidence but in the inferences that may be drawn therefrom. ■ Whether under the circumstances of this case a vehicle driver, seeing the car ahead of him start up and looking to the left to see if there are cars approaching which would cross the paths of both and seeing none, is justified in assuming that the car ahead of him will continue on and in starting his vehicle without determining that the other vehicle has not stopped, is a question of fact for the jury. ■ Likewise, the question of whether the driver of a vehicle stopped at the type of intersection here and knowing there is a vehicle immediately behind him starting to enter a clear intersection is justified in suddenly stopping without regard to whether the other vehicle has started to move, is likewise a jury question. As to both questions a reasonable inference could be drawn either way. ■ Therefore the question is not one of law, and the court properly instructed on the subject and left it to the jury to decide.

■ Generally it is negligence as a matter of law for the driver of a car to fail to look ahead before proceeding. However, here the defendant observed the car ahead of him starting forward and that there was nothing coming on Polhemus to cause that car to stop. ■ As said in 7 California Jurisprudence 2d page 14: ''Since it is manifestly impossible for one driving along a street to look in both directions at the same time, it ordinarily should be left to the jury to determine in each case what amount of vigilance would be required to constitute care. Usually, looking only in one direction without ascertaining whether the other direction is clear may be found to be a violation of duty. But if the driver looks first in one direction and then in the other, and sees no oncoming traffic that might affect his operations, the question of his due care should be left to the trier of the facts.'' Whether the fact that the first car started ahead was an invitation to defendants' truck to proceed and whether under the circumstances here, particularly the peculiar angle at which the lane debouches into the underpass and the necessity for a vigilant watch of the street ahead and to defendant's left, defendant had the right to assume, where there was no traffic to cause the lead car to stop, it would not do so, was a jury question. ■ As said in 7 California Jurisprudence 2d page 14, *supra*:

"Although the duty of ordinary care may not be satisfied in all cases by looking only once in a certain direction, ordinarily the question whether the driver should have looked or listened a second or third time before starting to cross the intersection, . . . is one of fact for the determination of the jury as one upon which ordinary minds may differ."

 "The degree of care required in watching the movements of a particular machine depends upon the facts and circumstances existing at the time and place of the accident" and a driver is required to use that degree of care, only, which would be required of a reasonably prudent driver under similar circumstances. (*Samuelson* v. *Siefer*, 62 Cal.App.2d 320, 325 [144 P.2d 879]. See also *Dieckmann* v. *Signorini*, 47 Cal.App.2d 481 [118 P.2d 319], where it was held that whether a driver approaching an intersection and intending to make a left turn was negligent in not again looking to his rear after having looked some 360 feet from the intersection was a jury question.)

### 2. *Burden of Proof.*

 While plaintiff offered no instruction upon the subject, he contends that the trial court's instruction on the burden of proof was not sufficient and that the court should have instructed in so many words that the burden of proving contributory negligence was on the defendant. The court on its own motion gave the usual general instruction that the party who asserts the affirmative of an issue must carry the burden of proving it and that if the evidence were evenly balanced on any issue the jury must find against the party asserting the affirmative of that issue. While the court gave a brief definition of contributory negligence, stating that one who is guilty of such may not recover from another for the injury suffered, it did not refer to the subject again, although on two occasions, in addition to considerable instruction on the question of negligence of the defendants, it specifically stated that a verdict should be rendered against the defendants if their negligence appeared. In *Abelseth* v. *San Francisco*, 129 Cal.App. 552 [19 P.2d 53], it was held that an offered instruction that the burden of proving contributory negligence rested on the defendants should have been given because a substitute instruction on the subject was not given. Here, however, the court did give an instruction on the burden of proof which covered the subject generally. If plaintiff desired a more specific instruction he should have offered it. As he points out in his brief, section 607a, Code of Civil Pro-

cedure, requires counsel, "before the first witness is sworn," to deliver to the court "all proposed instructions to the jury covering the law as disclosed by the pleadings." Here, the issue of contributory negligence was raised by the pleadings, so that it was plaintiff's duty to give the court instructions on that subject at the opening of the trial. If it had developed that the evidence did not justify the giving of such instructions the plaintiff could then request the court to disregard them. We see no reason why the rule stated in *Ornales* v. *Wigger*, 35 Cal.2d 474, 478 [218 P.2d 531], should not be applied. "Ordinarily, before an appellant may complain of the lack of an instruction, he must have made a request that the charge be made more specific, or ask for qualifying instructions." The instruction given by the court was a correct one as to the definition of contributory negligence. Likewise the instructions on burden of proof were correct. If plaintiff desired them to be made more specific it was his duty to so inform the court. (See cases cited in 24 Cal.Jur. 796, and 10 Cal.Jur. 10-Yr. Supp. 659.) In *Ramos* v. *Service Bros.*, 118 Cal.App. 432 [5 P.2d 623], it was held that if the appellant desired a definition of the words "preponderance of evidence" used in the court's instructions it was appellant's duty to offer an instruction on the subject. To the same effect, concerning "prima facie evidence," see *Hamm* v. *San Joaquin etc. Canal Co.*, 44 Cal.App.2d 47 [111 P.2d 940]; "along the shoulders of the highway," *Mecham* v. *Crump*, 137 Cal.App. 200, 204 [30 P.2d 568]; and "highest degree of care and diligence," *Bezera* v. *Associated Oil Co.*, 117 Cal. App. 139, 144 [3 P.2d 622]. See also *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36, 44 [297 P. 884], where the instruction given by the court on the doctrine of last clear chance failed to include one of the elements usually in such instruction.

The judgment is affirmed.

Peters, P. J., and Dooling, J.,* concurred.

A petition for a rehearing was denied December 2, 1955, and appellant's petition for a hearing by the Supreme Court was denied December 28, 1955. Carter, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.